Hoffheimer, J.
This was an action brought by plaintiff, to compel the City Hall Bank to accept a surrender of ten shares of stock formerly owned by one Keim and to deliver up to plaintiff a new certificate for said shares of stock.
The City Hall Bank answered that it had no interest in the controversy, save that it was notified that the stock was claimed by one Keim, a party hereto, and it stated that it ivas ready to transfer the stock on the order of this court.
Defendant, Keim, by answer denies that plaintiff is the owner of the stock in question, and by cross-petition claims that the • plaintiff fraudulently obtained the same from him, and he prays that the stock may be decreed to be his and for an accounting between himself and- the plaintiff.
I find no fraud in the purchase by the plaintiff from defendant, Keim, of the bank stock involved in this transaction. Plaintiff for some time had been the pledgee of this stock. Hé held *416 it as collateral for loans made by him to defendant, Keim. Mr. Keim finally desired to square accounts and obtain whatever balance was found to be due him on the sale of the collateral. The evidence shows there was no active market for the stock and it is not proven that plaintiff knew any person who was willing to buy at a price higher than the price quoted in the papers at the time, or that he knew the stock would bring a better price at that time. Defendant voluntarily offered to sell his stock and plaintiff agreed to buy at the quoted price. The sale was thereupon consummated. Defendant knew he was selling to plaintiff, a fact which is strongly evidenced by several circumstances. If plaintiff had been acting as broker he would doubtless have taxed his commission for the sale of the stock in rendering his final account. There was no such charge made.
In the next place, the language used by Mr. Keim himself in his reply to plaintiff’s letter excludes any other idea. lie says: “Since you called the sale off last Friday, the 9th inst., and said you could not sell I have changed my mind about it. ’ ’ Such language is hardly consistent with the theory that plaintiff was acting as a broker.
The letter of plaintiff, of date February 9, 1906, was not a rescission nor intended as such by plaintiff. Plaintiff immediately, on ascertaining that the transfer of the stock was blocked by prior bankruptcy proceedings of Keim’s, stopped payment on the check which he had given in payment of said stock pending good delivery of the stock to him, in which, under the circumstances, he was certainly justified.
As I have said, the evidence wholly fails to show actual fraud, ■nor is there any constructive fraud in the case. Even if plaintiff had been acting in the capacity of broker for defendant, under the evidence he had a perfect right to buy this stock himself as there was no bad faith, no concealment, the price having been agreed upon — the current price quoted in the papers — and as plaintiff was known to defendant to be the purchaser. See Dunlap’s-Paley on Agency, 33; Storey on Agency, Section 210; Reickman v. Bergholz, 37 N. J. L., 437, quoted approvingly in Iron Co. v. Harper, 41 O. S., 100-108.
Thorne Baker, for plaintiff.
Otway J. Cosgrave, for defendant.
Robertson & Buchwalter, for City Hall Bank.
The equities then being with the plaintiff a decree may be taken accordingly.